IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| HAROLD L. SKILES, JR. | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-0418-Y |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| DEFENDANT. | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions, and Recommendation

of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

I. STATEMENT OF THE CASE

Plaintiff Harold L. Skiles, Jr. ("Skiles") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying his claim for supplemental security income ("SSI")

under Title XVI of the Social Security Act ("SSA").  In September 2010, Skiles protectively

applied for SSI benefits.[1]  (Tr. 11, 149-56.)  After his application for benefits was denied

initially and on reconsideration, Skiles requested a hearing before an administrative law judge

("ALJ").  (Tr. 11, 74-78, 82-88.)  The ALJ held a hearing on January 19, 2012, and issued an

---

[1] Skiles previously filed an application for SSI benefits that was denied in an ALJ decision dated November
12, 2009.  The claimant, who entered prison that month, did not appeal this decision.  (Tr. 11.)

unfavorable decision on February 16, 2012.[2]  (Tr. 11-17, 22-68.)  On May 21, 2012, the Appeals Council denied Skiles' request for review, leaving the ALJ's decision as the final decision of the Commissioner in his case.  (Tr. 1-4.)  On June 30, 2012, Skiles filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA.  In addition, numerous regulatory provisions govern SSI benefits.  *See* 20 C.F.R. Pt. 416.  The SSA defines a "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in "any substantial gainful activity."  42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled, and thus entitled to SSI benefits, a five-step analysis is employed.  20 C.F.R. § 416.920(a)(4).  First, the claimant must not be presently working at any substantial gainful activity.  *Id.* § 416.920(b).  "Substantial gainful activity" is defined as work activity "that involves doing significant physical or mental activities . . . for pay or profit."  *Id.* § 416.972.  Second, the claimant must have an impairment or combination of impairments that is severe.  *Id.* § 461.920(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).  Third, disability will be found if the impairment or combination of impairments meets or equals an impairment contained in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R. § 416.920(d).  Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past

---

[2] In the ALJ's opinion, she notes that the hearing was held on January 9, 2012.  However, the transcript of the hearing indicates that it was actually held on January 19, 2012.  (Tr. 11, 22-24.)

relevant work. *Id.* § 416.920(f). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 416.920(g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999).[3] At steps one through four, the burden of proof rests upon the claimant to show that he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

In his brief, Skiles presents the following issues:

1. Whether the ALJ failed to properly evaluate the medical opinion evidence in determining Skiles' residual functional capacity ("RFC"); and

---

[3] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant can still do notwithstanding his physical and mental limitations. 20 C.F.R. § 416.920(a)(4). The claimant's RFC is used at both the fourth and fifth steps of the sequential analysis. *Id.*

2.  Whether the ALJ failed to incorporate all of the functional limitations into the RFC determination and the hypothetical to the vocational expert ("VE").

(Plaintiff's Brief ("Pl.'s Br.") at 1.)

## IV.   ALJ DECISION

In her February 16, 2012 decision, the ALJ concluded that Skiles was not disabled within the meaning of the SSA. (Tr. 13, 24.)  In making her determination, the ALJ proceeded to follow the five-step sequential evaluation process set forth above.  At Step One, the ALJ found that Skiles had not engaged in any substantial gainful activity since September 20, 2010. (Tr. 11, 16.)  At Step Two, the ALJ found that Skiles suffered from the severe impairments of "seizure disorder, schizophrenia, [and] rheumatoid arthritis." (Tr. 16; *see* Tr. 12.)  At Step Three, the ALJ found that Skiles' severe impairments did not meet or equal the severity of any impairment contained in the Listing. (Tr. 12, 16.)  As to Skiles' RFC, the ALJ stated:

> I have concluded that the claimant has retained the residual functional capacity for light work[4] limited by no climbing, kneeling, crouching or crawling, and no more than occasional other postural activities; the need to observe normal seizure-related precautions including not working at unprotected heights or around dangerous moving machinery; the need for work requiring no more than one or two simple tasks for completion of job duties; the need to work with things rather than people; and the ability to maintain attention and/or concentration for two hour periods between breaks, and to pace himself over a 40-hour workweek.

(Tr. 14 (footnote added); *see* Tr. 16.)  In making this determination, the ALJ "concluded that the claimant has had mild restriction in activities of daily living; moderate difficulties in maintaining

---

[4] Pursuant to the regulations, light work is defined as follows:

Light Work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b).

social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation of extended duration." (Tr. 15.)

At Step Four, the ALJ found that Skiles did not have any past relevant work. (Tr. 15, 16.) Finally, at Step Five, the ALJ opined that, based on the VE's testimony, there were a significant number of other jobs in the national economy that Skiles could perform; thus, Skiles was not disabled. (Tr. 15, 16.) In reaching this conclusion, the ALJ, at the hearing, posed the following hypothetical question to the VE:

> If we assume a claimant who's from 47 to 49 years of age with 11 years of education and the ability to perform modified light work with the following limitations. The ability to lift and carry 20 pounds occasionally, 10 pounds frequently. Standing and walking would be limited to two hours out of eight. Sitting six hours out of eight. And I'm assuming standard breaks.
>
> Pushing and pulling would be limited by the ability to lift and carry. This person should never climb. There would be no kneeling, crouching or crawling and the other posturals would be occasional. This person should also avoid even moderate exposure to hazzards [sic]. That would include machinery and heights. Would be limited to simple one or two step tasks, working with things rather than with people.
>
> But this person would be able to maintain attention and concentration for two hour periods and pace over a 40 hour week. . . .
>
> . . . .
>
> . . . . Would there be other jobs that that individual would be able to perform?

(Tr. 62-63; *see* Tr. 15.) In response, the VE noted that such a person could perform the job duties of:

> [A]ssembler of small products (D.O.T. 706.684-022) with 130,000 such jobs in the national economy, including 8,000 in Texas; or as a hand packer (D.O.T. 920.687-082) with up to 37,000 jobs in the national economy, including 2,500 in

Texas; or as an inspector and hand packager (D.O.T. 559.687-074) with up to 140,000 jobs in the national economy, including 8,000 in Texas.

(Tr. 15; *see* Tr. 63.)

## V.   DISCUSSION

### A.   Evaluation of Medical Opinions in the RFC Determination

In his brief, Skiles makes several arguments regarding the ALJ's failure to properly evaluate the medical opinion evidence of record in determining his RFC.  (Pl.'s Br. at 8-11.)

#### 1.  Global Assessment of Functioning Scores

First, Skiles argues that "[a]ll of the treating and examining sources evaluated Mr. Skiles' status as at a level which would preclude maintaining competitive employment, as reflected by the Global Assessment of Functioning (GAF) determinations."[5]  (Pl.'s Br. at 8-9.)  However, a GAF score is not determinative of a claimant's ability to work.  See *Fuller v. Astrue*, No. 4:09-CV-197-A, 2010 WL 5566819, at *8 (N.D. Tex. Oct. 13, 2010), *adopted in* 2011 WL 94549 (N.D. Tex. Jan. 11, 2011).  Federal courts have specifically declined to find a link between a claimant's GAF score and the ability or inability to work.  *See* 65 Fed. Reg. 50,746, 50,764-65 (Aug. 21, 2000) (declining to endorse the GAF scale for use in Social Security and SSI disability programs and stating that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings"); *see also, e.g., Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005); *Andrade v. Astrue*, No. 4:11-CV-318-Y, 2012 WL 1106864, at *10 (N.D. Tex. Feb. 13, 2012), *adopted in* 2012 WL 1109476 (N.D. Tex. Apr. 2, 2012).

---

[5] A GAF or Global Assessment of Functioning score is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational functioning.  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) (DSM-IV).

## 2. Treating Physician

Next, Skiles argues that the ALJ improperly rejected the opinion of Skiles' treating psychiatrist, Dr. Robert Mims, M.D. ("Dr. Mims"), without considering the factors set forth in 20 C.F.R. § 416.927(c). (Pl.'s Br. at 9-10.) In a Mental Residual Functional Capacity ("MRFC") Questionnaire dated January 13, 2012, Dr. Mims diagnosed Skiles with schizoaffective disorder, antisocial personality, a history of closed head injury, seizure disorder, rheumatoid arthritis, and severe chronic pain. (Tr. 487; *see* Tr. 487-91). Dr. Mims further opined that Skiles had a current GAF score of 30[6] and his prognosis was "poor." (Tr. 487.) Dr. Mims also stated that, *inter alia*, as to the mental abilities and aptitudes needed to do unskilled work, Skiles was either seriously limited, unable to meet competitive standards, or had no useful ability to function in all categories. (Tr. 489.)

In this case, as noted above, the ALJ determined that Skiles had the RFC to perform light work but he could not climb, kneel, crouch, or crawl and could only occasionally perform the other postural activities. (Tr. 14, 16.) In addition, the ALJ found that Skiles could not work at unprotected heights or around dangerous moving machinery and could only perform work that required no more than one or two simple tasks for completion of job duties. (*Id.*) The ALJ also stated that Skiles needed to work with things rather than people and had the ability to maintain attention and/or concentration for two hour periods between breaks. (*Id.*) In reaching her RFC determination, the ALJ reviewed the medical evidence of record, including the following: (1) a December 2010 consultative psychological evaluation in which Deborah Cole, Ph.D. ("Dr. Cole"): (a) diagnosed Skiles with, *inter alia*, a mood disorder due to brain injury with depressive

---

[6] A GAF score between 21 and 30 indicates that behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas. DSM-IV at 34.

and psychotic features, (b) noted that Skiles' "prognosis is good with continued treatment,"[7] and (c) gave Skiles a GAF score of 40;[8] (Tr. 339; *see* Tr. 12-13, 336-39); (2) records indicating that in August 2010, after being released from prison, Skiles: (a) began treatment at Mental Health Mental Retardation ("MHMR") of Tarrant County, (b) "carries a diagnosis of schizoaffective disorder in a background of polysubstance abuse" with his last use being 11 months ago, (c) failed to keep a follow-up appointment in September 2010, and (d) contacted MHMR in October 2010 stating that he had been out of medications, was feeling depressed, could not sleep, and was not having any psychosis (Tr. 12-13; *see also* Tr. 376-82); (3) examination in December 2010, in which Dr. Mims, who was a provider at MHMR, noted that Skiles had a seizure disorder from a car accident in 1982 and that Skiles' last seizure was in November 2008 (which, the ALJ noted, was inconsistent with an earlier report from Skiles that he had two seizures while in prison) (Tr. 12-13; *see also* Tr. 260-64; 377-78); (4) an August 31, 2010 CT scan that showed a "focal lucency along the posteromedial aspect of the left frontal lobe anterior to the suprasellar cistern of unknown age, but with no other patent abnormalities" (Tr. 13; *see also*, Tr. 465); (5) diagnostic testing of the cervical spine dated April 2011 that showed "mild degenerative changes but nothing that would account for the pain" (Tr. 13; *see Tr.* 406-07); (6) May 2011 lab testing

---

[7] The Court notes that the ALJ did not specifically discuss Dr. Cole's diagnosis in her decision. Instead, the ALJ noted that, during the evaluation with Dr. Cole, Skiles stated that his criminal record consisted of convictions for burglary of a habitation, robbery, assisting with an escape, and writing hot checks, for which he had served five months, ten years, four years, and eleven months, respectively. (Tr. 12.) In addition, the ALJ stated that Skiles had reported to Dr. Cole that he "was diagnosed with schizophrenia the previous year while in prison, and stated that he had paranoid ideation, hallucinations, insomnia, depression, anhedonia, anergia, poor concentration, and low tolerance for frustration." (Tr. 12.) Because the ALJ reviewed Dr. Cole's evaluation, the Court can assume that the ALJ was aware of all the information contained in such evaluation. *See, e.g., Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005) ("The ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it, and the ALJ's decision states explicitly that he considered the entire record in his decision."); *Poret v. Astrue*, No. 11-527, 2011 WL 5910173, at *9 (E.D. La. Nov. 7, 2011) ("It is clear from the ALJ's decision that she considered the medical opinion of 'the State Agency consultant who reviewed the medical records' (Tr. 17), namely, Dr. Singh[, and n]o substantial rights of plaintiff were affected by the ALJ's failure to identify Dr. Singh by name or to cite Exhibit 9F in addition to Exhibit 8F.").

[8] A GAF score between 31 and 40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work, or school, family relations, judgment, thinking or mood. DSM-IV at 34.

indicating that Skiles "was positive for a rheumatoid factor" but that Skiles reported he was "doing well with no new complaints" after starting "a three-month trial of Prednisone" (Tr. 13; *see* Tr. 450); (7) a psychological evaluation dated December 2011 in which George Mount, Ph.D. ("Dr. Mount"): (a) diagnosed Skiles with Bipolar I Disorder, posttraumatic stress disorder, (b) gave him a GAF rating of 44,[9] and (c) noted that Skiles' speech was normal, he was fully oriented, and he had average intellectual functioning (Tr. 13-14, *see also* Tr. 432-34); (8) medical records showing that medications helped with Skiles' schizoaffective disorder but that Skiles has not been very compliant in taking his medications (Tr. 14; *see also* Tr. 376); (9) a Psychiatric Review Technique ("PRT") dated January 13, 2011 in which State Agency Medical Consultant ("SAMC") Susan Thompson, M.D. ("SAMC Thompson") opined that Skiles had: (a) mild restrictions in activities of daily living, (b) moderate difficulties in maintaining social functioning, (c) moderate difficulties in maintaining concentration, persistence or pace, and (d) no episodes of decompensation of extended duration (Tr. 14; *see also* Tr. 360); (10) an MRFC Assessment also dated January 13, 2011 in which SAMC Thompson opined that Skiles "would be markedly limited in several functional areas including the ability to understand, remember and carry out detailed instructions, but that he should be able to understand, remember and carry out simple instructions" (Tr. 14; *see* Tr. 364-67); and (11) a Physical Residual Functional Capacity ("PRFC") Assessment dated February 2, 2011 in which SAMC Manda Waldrep, M.D. ("SAMC Waldrep") opined that Skiles "could perform light work activity with certain postural limitations and limitations connected with his seizure disorder."[10] (Tr. 14; *see* Tr. 368-75).

---

[9] A GAF score between 41 and 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning.  DSM-IV at 34.

[10] Specifically, Dr. Waldrep found in the PRFC assessment that Skiles could: (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk at least 2 hours in an 8-hour workday; (3) sit for about six hours in an 8-hour workday; and (4) had the unlimited ability to push and/or pull.  (Tr. 369.)

As to Dr. Mims' opinions, the ALJ stated:

> Dr. Mims has been the attending psychiatrist at the Mental Health Mental
> Retardation center. However, I do not find that Dr. Mims['] notes support the
> very restrictive residual functional capacity. The progress notes not only show
> that the claimant has a history of not taking his medications on a consistent basis
> (which affect their efficacy) but that the claimant's mood would improve greatly
> when taking his medications as directed. Indeed, in December 2011, the claimant
> was noted as being cheerful and pleasant, with Dr. Mims noting that the claimant
> "can't remember when he was so happy". The claimant denied symptoms of
> depression, and said that he only would occasionally hear the voices of his father
> and cousin. The claimant reported that he had been clean and sober for the past
> five months, although he has not been attending any meetings and did not have a
> sponsor. The claimant denied any side effects to his medications (although Dr.
> Mims subsequently claimed the claimant did have adverse side effects). The
> notes also do not support the assertion that the claimant is unable to walk due to
> his arthritis. Again, the notes from the prison did not show that the claimant had
> any difficulty ambulating.

(Tr. 14 (internal citations omitted).)

RFC is what an individual can still do despite her limitations.[11]   Social Security Ruling

("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).   It reflects the individual's

maximum remaining ability to do sustained work activity in an ordinary work setting on a

regular and continuing basis. *Id. See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A

regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.

*Id.* RFC is not the least an individual can do, but the most. SSR 96-8p, 1996 WL 374184, at *2.

The RFC assessment is a function-by-function assessment, with both exertional and

nonexertional factors to be considered and is based upon all of the relevant evidence in the case

record. *Id.* at *3-5. The exertional and nonexertional capacity "must be expressed in terms of

work-related functions." *Id.* at *6. "Work-related mental activities generally required by

competitive, remunerative work include the abilities to: understand, carry out, and remember

---

[11] The Commissioner's analysis at Steps Four and Five of the disability evaluation process is based on the
assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner
assesses the RFC before proceeding from Step Three to Step Four. *Id.*

instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.*

Controlling weight is assigned to the opinion of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(c); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett v. Chater*, 67 F.2d 558, 566 (5th Cir. 1988); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 416.927(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § [416.927]." 209 F.3d 448, 453 (5th Cir. 2000). Under the statutory analysis of 20 C.F.R. § 416.927(c), the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 416.927(c); *see also* SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).

Assuming without deciding that the ALJ was required to go through the factors set forth in 20 C.F.R. § 416.957(c) before rejecting Dr. Mims' January 2012 RFC evaluation,[12] the Court concludes that the ALJ did properly evaluate Dr. Mims' January 2012 MRFC Questionnaire using the factors set forth in such regulation. As to factors one and two under which the ALJ evaluates the examining and treatment relationship between Skiles and Dr. Mims, the ALJ reviewed Skiles' treatment history with Dr. Mims and the various times Skiles was examined by Dr. Mims or his staff. (Tr. 12-13; *see, e.g.,* Tr. 376-388, 467-86.) *See* 20 C.F.R. § 416.927(c)(1)-(2). While the ALJ did not expressly name Dr. Mims when reviewing *some* of Skiles' clinical treatment records at MHMR, Dr. Mims was Skiles' treating physician during the time which Skiles attended the center. (*Id.*) In addition, it is clear that the ALJ recognized Dr. Mims as one of Skiles' treating physicians as she noted that Dr. Mims was the "attending physician." (Tr. 14.)

As to factors three, four, and six under which the ALJ evaluates the supportability and consistency of physician's opinion as well as any other factors that "tend to support or contradict the opinion" (*see* 20 C.F.R. § 416.927(c)(3), (4), (6)), the ALJ noted the internal consistencies among the notes and comments made by Dr. Mims and his opinions in the January 2012 MRFC Questionnaire as well as the inconsistencies in such questionnaire and other medical evidence in the record. (Tr. 14.) Because the ALJ did properly consider the treatment records and opinions

---

[12] As noted above, pursuant to *Newton*, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 416.927(c) only if there is no reliable medical evidence from another treating or examining physician that controverts the treating specialist. 209 F.3d at 455-57. An ALJ does not have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart,* 291 F. Supp. 2d 497, 507-11 (S.D. Tex. 2003); *Contreras v. Massanari,* No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in Newton is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.")

of Dr. Mims and went through the factors listed in 20 C.F.R. § 416.927(c) before rejecting Dr.

Mims' January 2012 MRFC Questionnaire, the Court concludes that the ALJ did not err.[13]

Skiles also argues that the ALJ should not have rejected the opinion of Dr. Mims because

it was consistent with the opinions of Dr. Mount and Dr. Cole, two of the consulting physicians,

and SAMC Thompson in that all agree that "Plaintiff suffers from an impairment of such

severity as would be expected to preclude an individual from maintaining employment."

(Plaintiff's Reply Br. ("Pl.'s Reply") at 3-5.)  However, "[t]he ALJ as factfinder has the sole

responsibility for weighing the evidence and may choose whichever physician's diagnosis is

most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing

*Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).   Contrary to Skiles' claims, not all

medical evidence in the record indicated that Skiles was precluded from maintaining

employment.  In this case, the ALJ (1) properly considered and discussed the evidence in the

record in assessing Skiles' RFC; (2) adequately explained the reasoning for her RFC decision

and for giving less weight to certain evidence; and (3) exercised her responsibility as factfinder

in weighing the evidence and in choosing to incorporate limitations into her RFC assessment that

were most supported by the record.  *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

Consequently, the ALJ did not err and remand is not required.

---

[13]As to factor five, more weight is generally given "to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R. § 416.927(c)(5).  *See also Newton*, 209 F.3d at 455.  Factor five does not apply here because Dr. Mims is a primary care physician and not a specialist.  Thus, his opinion is entitled to no additional weight under this factor.

### 3.  State Agency Medical Consultant Opinion

Skiles next argues that the ALJ erred by failing "to consider the specific functional limitations noted by the state agency physician and fail[ing] to consider the vocational testimony that these limitations would preclude Mr. Skiles from maintaining employment in the job upon which the ALJ has relied." (Pl.'s Br. at 10-11.)  In an MRFC Assessment dated January 13, 2011, SAMC Thompson, *inter alia*, opined in Section I, which is titled "Summary Conclusions," that Skiles was markedly limited in his ability to understand, remember, and carry out detailed instructions. (Tr. 364.)  SAMC Thompson further opined in Section I that Skiles was moderately limited in his ability to: (1) maintain attention and concentration for extended periods; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) accept instructions and respond appropriately to criticism from supervisors; (5) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (6) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; (7) respond appropriately to changes in the work setting; and (8) set realistic goals or make plans independently of others. (Tr. 364-65.)  In Section III, which is titled "Functional Capacity Assessment," SAMC Thompson stated, "Cl[aimant] can understand, remembe[r], and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, and respond app[ro]priately to changes in routine work setting." (Tr. 366 (emphasis omitted).)  As to SAMC Thompson's opinions, the ALJ stated:

A DDS psychiatrist evaluated the medical record and concluded that the claimant had mild restriction in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation of extended duration. The psychiatrist, Susan Thompson, M.D., also opined that the claimant would be markedly limited in several functional areas including the ability to understand, remember and carry out detailed instructions, but that he should be able to understand, remember and carry out simple instructions.

(Tr. 14 (internal citations omitted).)

Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence (from non-examining sources) at both the administrative hearing and Appeals Council levels of administrative review. 20 C.F.R. § 416.927(e); SSR 96-6p, 1996 WL 374180, at *2-4 (S.S.A. July 2, 1996). Pursuant to SSR 96-6p, the ALJ and the Appeals Council are not bound by the state agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. SSR 96-6p, 1996 WL 374180, at *2.

In this case, it is apparent from the ALJ's decision that she did take SAMC Thompson's MRFC findings into account when determining Skiles' RFC as she specifically referenced SAMC Thompson's MRFC Assessment as well as SAMC Thompson's January 13, 2011 PRT findings. (Tr. 14.) Although not clear, Skiles appears to complain that the ALJ failed to consider the specific functional limitations noted by SAMC Thompson in section I of the MRFC Assessment.[14] (Pl.'s Br. at 8 (citing to Tr. 364-66 (SAMC Thompson's Jan. 13, 2011 MRFC Assessment), 10.) While the Court agrees that the ALJ did not specifically mention the limitations noted in Section I of the above-referenced MRFC Assessment, there is "nothing in the commissioner's regulations or rulings that requires an ALJ to make findings concerning each of the limitations listed [in Section I] on the 'Summary Conclusions' portion of the [MRFC]

---

[14] Skiles' complaint regarding the ALJ's alleged failure to include the functional limitations from SAMC Thompson's PRT will be addressed in the next section.

forms utilized by the SAMCs in assessing a claimant's mental residual functional capacity." *Huber v. Astrue*, No. 4:07-CV-477-A, 2008 WL 4694753, at *7 (N.D. Tex. Oct. 22, 2008). According to the Commissioner's Programs Operations Manual System ("POMS"), Section I of the MRFC, which contains the limitations that Skiles claims should not have been left out of the RFC determination, is "merely a worksheet to aid [the medical consultant] in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." POMS § DI 24510.060B.2. Section III of the MRFC "is for recording the mental RFC determination." POMS § DI 24510.060B.4. "It is in this section that the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id.*   Thus, based upon the MRFC form itself, it was not error for the ALJ to fail to include or discuss the items from Section I of the MRFC in assessing Skiles' mental RFC as they did not contain the actual opinion of SAMC Thompson as to Skiles' RFC. Instead, it is Section III that contains the actual mental RFC assessment.

In Section III of the MRFC, SAMC Thompson opined, *inter alia*, that Skiles could understand, remember, and carry out simple instructions and make simple decisions as well as attend and concentrate for extended periods and interact adequately with co-workers and supervisors. (Tr. 366.) Thus, according to Section III of the MRFC, Skiles' only real limitation was that he needed to be limited to simple instructions and decisions, a limitation that the ALJ considered and included in her RFC determination when she limited Skiles to work requiring "no more than one or two simple tasks." (Tr. 16; *see* Tr. 14.) Consequently, the ALJ did not err and remand is not required.

**B.    Incorporating All Functional Limitations into RFC and Hypothetical to VE**

Skiles also argues that the ALJ erred in failing to incorporate the ALJ's own finding that Skiles suffered from a moderate limitation in maintaining social functioning and in maintaining concentration, persistence, and pace into her RFC determination or her hypothetical to the VE. (Pl.'s Br. at 11; *see* Pl.'s Reply Br. at 5-7.)  Specifically, Skiles states:

> Working with "things rather than people" does nothing to consider whether Plaintiff can successfully interact with supervisors, co-workers, or the general public.  The VE was not asked to consider limitations in those areas, even though the state agency physician found Plaintiff to be moderately impaired in his ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  Thus, the ALJ has not incorporated into the RFC or the hypothetical question, significant limitations in functional ability which she found to exist.

> Further, the limitation to "simple" work fails to adequately accommodate the moderate limitations in concentration, persistence and pace, which the ALJ found to exist.

(Pl.'s Br. at 11-12.)

Federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special technique." *See* 20 C.F.R. § 404.1520a.  In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(1).  To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment.    20 C.F.R. § 404.1520a(b)(1); *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001).  For most Listings, the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A, B, and sometimes C, of the adult mental disorders contained in the Listings.  *See* 20 C.F.R. Pt. 404, Subpt. P, App.

1 § 12.00; 20 C.F.R. § 404.1520a(b)(2) & (c).[15] "Paragraph B" contains four broad functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace;[16] and 4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.[17]   The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 404.1520a(e)(4).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. § 404.1520a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment is not severe at Step Two of the sequential evaluation process, which generally concludes the analysis and terminates the proceedings. 20 C.F.R. § 404.1520a(d)(1). If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine at Step Three if it meets or equals a listed mental disorder of the Listing. 20 C.F.R. § 404.1520a(d)(2).[18]   To determine if it meets or is equivalent in severity to a listed mental disorder, the ALJ must compare the medical findings about the claimant's impairment and the

---

[15] This applies to all adult mental disorders in the Listings except Listings 12.05 and 12.09. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.

[16] The category of concentration, persistence or pace "refers to the ability to sustain focused attention and concentration to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Part 404, Subpart P., App. 1, § 12.00C(3).

[17] The degree of limitation in the first three functional areas is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of the fourth functional area is rated on a four-point scale which includes none, one or two, three, and four or more. *Id.* These four functional areas are known as the paragraph "B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.

[18] A claimant will be found to have a listed impairment "if the diagnostic description in the introductory paragraph [of the Listing] and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied." 20 C.F.R. Pt. 4, Subpt. P, App. 1 § 12.00A. "The criteria in paragraph A substantiate medically the presence of a particular mental disorder." *Id.* "The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity." *Id.*

rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment. 20 C.F.R. § 404.1520a(d)(3); *see Boyd*, 239 F.3d at 705.

The responsibility for determining the RFC falls to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). The paragraph B criteria limitation of having a moderate limitation in maintaining social functioning and in maintaining concentration, persistence, and pace that the ALJ found following the "special technique" is not an RFC assessment. SSR 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996). Instead, it is used to rate the severity of Skiles' mental impairments at Steps 2 and 3 of the sequential evaluation process. *Id.* "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 of the Listing of Impairments." *Id.* The RFC assessment includes consideration of the claimant's abilities to: (1) understand, carry out, and remember instructions; (2) use judgment in making work-related decisions; (3) respond appropriately to supervision, co-workers, and work situations; and (4) deal with changes in a routine work setting. *Id.* at *6. "While the regulations require the ALJ to evaluate[] the limitations imposed by Plaintiff's mental impairments in certain areas and direct the ALJ to proceed to the RFC determination if Plaintiff's impairments are found severe, the regulations do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into either the RFC determination or the hypothetical question posed to the VE." *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009).

Based on the facts in this case, the ALJ's mental RFC determination limiting Skiles to, *inter alia*, only performing work that required one or two simple tasks ***and*** maintaining attention and/or concentration for two hour periods between breaks is not contradictory with the ALJ's finding in the "special technique" that Skiles was moderately limited in his ability to maintain concentration, persistence, or pace.[19]  It is clear that the ALJ recognized in her decision that she was required to evaluate Skiles' mental impairments pursuant to the "special technique" set forth in the regulations as she made such an evaluation.  (Tr. 15.)  The ALJ then incorporated Skiles' functional limitation of having moderate difficulties in concentration, persistence, and pace into

---

[19] *See, e.g., Bordelon v. Astrue*, 281 F. App'x 418, 423 (5th Cir. 2008) (finding restriction to rare public interaction, low stress, and one-to-two step instructions reflect that ALJ has reasonably incorporated the Plaintiff's moderate concentration, persistence, and pace limitations); *De La Rosa v. Astrue*, No. EP-10-CV-351-RPM, 2012 WL 1078782, at *14-15 (W.D. Tex. Mar. 30, 2012) (holding that the ALJ's finding that claimant had moderate limitation in concentration, persistence, and pace was properly accounted for in an RFC determination that claimant was, *inter alia*, able to understand, remember, and carry out detailed but not complex instructions, make decisions, and attend and concentrate for extended periods); *Gipson v. Astrue*, No. 3:10-CV-1413-BR, 2011 WL 540299, at *6-7 (N.D. Tex. Feb. 11, 2011) (finding RFC reasonably incorporated Plaintiff's moderate limitation in concentration, persistence and pace and her limited ability to work with others by limiting Plaintiff to simple, unskilled work in which interaction with the public and co-workers was no more than incidental); *Chadwell v. Astrue*, No. 4:08-CV-736-Y, 2010 WL 3659050, at *11 (N.D. Tex. May 25, 2010) ("[T]he ALJ's finding that [the claimant] was moderately limited in her ability to maintain concentration, persistence, or pace is not inherently contradictory with an RFC assessment that [the claimant] could not perform work that involves complex instructions."); *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009) (holding, in essence, that the ALJ's finding that the claimant had a moderate limitation in concentration, persistence, and pace was not inconsistent with his RFC determination that claimant could understand, remember, and carry out more than simple instructions); *Hodgson v. Astrue*, No. 4:07-CV-529-Y, 2008 WL 4277168, at *8 (N.D. Tex. Sept. 16, 2008) ("[The claimant] has not demonstrated that a restriction [in the RFC determination] to simple one- and two-step tasks did not adequately accommodate her moderate difficulty maintaining concentration, persistence or pace."); *Adams v. Astrue*, No. CV07-1248, 2008 WL 2812835, at *4 (W.D. La. June 30, 2008) ("A limitation to simple, repetitive, routine tasks adequately captures deficiencies in concentration, persistence or pace."). *See also Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) ("Based on this record, the ALJ's hypothetical concerning someone who is capable of doing simple, repetitive tasks adequately captures [the claimant's] deficiencies in concentration, persistence or pace."); *Anderson v. Astrue*, No. 09-0971-TC, 2011 WL 1655552, at *3 (D. Or. Mar. 25, 2011) ("Moderate, and even marked limitations in the ability to maintain attention, concentration, persistence or pace are compatible with the ability to perform unskilled jobs involving simple tasks."). *But see Eastham v. Comm'r of Soc. Sec. Admin.*, No. 3:10-CV-2001-L, 2012 WL 691893, at *8 (N.D. Tex. Feb. 17, 2012) ("The Court finds the Commissioner's contention that the phrase 'simple, repetitive work' encompasses difficulties with concentration, persistence, or pace is not persuasive."), *adopted in* 2012 WL 696756 (N.D. Tex. Mar. 5, 2012) (Lindsay, J.); *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (finding that claimant's impairment in concentration, persistence, or paces was not accommodated by limitation to simple tasks in the hypothetical to the vocational expert because it did not account for deficiencies in pace); *Owen v. Astrue*, No. 3:10-CV-1439-BH, 2011 WL 588048, at *14 (N.D. Tex. Feb. 9, 2011) ("As determined by several courts, a finding that Plaintiff can perform unskilled work is fatally flawed where the ALJ has found Plaintiff to have moderate limitations in concentration, persistence, or pace.")

*two* (not just one) limitations in the RFC: (1) requirement that Skiles perform work requiring no more than one or two simple tasks and (2) recognition that Skiles can maintain attention and/or concentration for only two-hour periods between breaks.

Furthermore, contrary to Skiles' arguments, the ALJ's limitation in the RFC that Skiles can only work with things rather than people does incorporate the ALJ's earlier finding that Skiles had a moderate limitation in maintaining social functioning.[20] The record indicates that the ALJ incorporated Skiles' functional limitations from his mental impairment into the RFC based upon the ALJ's evaluation of the evidence in this case. (Tr. 12-16.) As noted above, the ALJ properly discussed the evidence in the record in making her RFC determination, explained the reasoning for her RFC determination, and exercised her responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Because there is substantial evidence in the record that supports the ALJ's evaluation of Skiles' mental impairments as well as his mental RFC assessment, remand is not required.

As to Skiles' claims that the ALJ also failed to incorporate Skiles' moderate limitations in maintaining social functioning and in maintaining concentration, persistence, and pace in the hypothetical to the VE, the Court notes that a vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). The hypothetical question posed to the vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ's residual functional capacity assessment, and the claimant or his

---

[20] *See Herring v. Astrue*, 788 F. Supp. 2d 513, 516-19 (N.D. Tex. 2011) (finding that a moderate limitation in social functioning was reasonably incorporated into the RFC and hypothetical question as a limitation that the claimant could respond appropriately to supervisors and co-workers in a simple and routine work environment); *Vaughn v. Astrue*, No. 3:08-CV-1920-L, 2009 WL 3874607, at *6 (N.D. Tex. Nov. 17, 2009) (upholding ALJ's

representative must be afforded the opportunity to correct any deficiencies in the ALJ's question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). If the ALJ's hypothetical fails to incorporate all such functional limitations, the ALJ's determination is not supported by substantial evidence. *Id.*

In this case, at the hearing, the ALJ posed the following hypothetical to the VE:

> If we assume a claimant who's from 47 to 49 years of age with 11 years of education and the ability to perform modified light work with the following limitations. The ability to lift and carry 20 pounds occasionally, 10 pounds frequently. Standing and walking would be limited to two hours out of eight. Sitting six hours out of eight. And I'm assuming standard breaks.
>
> Pushing and pulling would be limited by the ability to lift and carry. This person should never climb. There would be no kneeling, crouching or crawling and the other posturals would be occasional. This person should also avoid even moderate exposure to hazzards [sic]. That would include machinery and heights. Would be limited to simple one or two step tasks, working with things rather than with people.
>
> But this person would be able to maintain attention and concentration for two hour periods and pace over a 40 hour week.

(Tr. 62; *see* Tr. 15.)

In the hypothetical question that the ALJ asked the VE, the ALJ properly incorporated all the functional limitations that she **found** in her RFC assessment into the hypothetical question. Because, as stated above, the ALJ's RFC determination was supported by substantial evidence and the ALJ's hypothetical to the VE "tracked" her RFC assessment, the ALJ did not commit error. *See Berry v. Astrue*, No. 3:11-CV-02817-L (BH), 2013 WL 524331, at *23 (N.D. Tex. Jan. 25, 2013), *adopted in* 2013 WL 540587 (N.D. Tex. Feb. 13, 2013) (Lindsay, J.); *Gipson v. Astrue,* No. 3:10-CV-1413-BK, 2011 WL 540299, at *6–7 (N.D. Tex. Feb. 11, 2011) (holding

---

findings as supported by substantial evidence and finding that hypothetical reasonably incorporated impairments ALJ found, despite failure to include moderate social functioning limitations).

that hypothetical reasonably incorporated disabilities found by ALJ because question closely tracked ALJ's RFC assessment, which took into consideration all impairments).

Finally, Skiles argues that the ALJ erred because she "failed to establish work which can be performed within Plaintiff's RFC and her determination at step 5 that he is not disabled is not supported by substantial evidence." (Pl.'s Br. at 14.) Specifically, Skiles states:

> [T]he VE acknowledged that all of the jobs she had identified and which were relied upon by the ALJ are at reasoning level 2.[21] She further acknowledged that reasoning level 2 requires understanding and carrying out detailed written or oral instructions. An individual markedly limited in the ability to understand, remember and carry out detailed written or oral instructions, as noted by the state agency physician (see Tr. 364) could not perform such jobs. (Tr. 64-65.)

(Pl.'s Br. at 13 (footnote added).)

While Skiles is correct that SAMC Thompson found in her January 13, 2011 MRFC that Skiles was markedly limited in his ability to understand, remember, and carry out detailed instructions, such a limitation was not ultimately found by the ALJ. Instead, the ALJ, as discussed above, found that Skiles was capable of performing jobs that required no more than one or two simple tasks for the completion of job duties. (Tr. 14, 16.) Because such a finding is supported by substantial evidence, the ALJ did not err and remand is not required.

Furthermore, although there is substantial evidence in the record supporting the ALJ's RFC determination, the court notes that SAMC Thompson's opinion itself does not explicitly

---

[21] Reasoning development level ("RDL") 1 requires the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Dictionary of Occupational Titles* ("DOT"), App. C (Rev. 4th ed.1991). RDL 2 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." *Id.* RDL 3 requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and d]eal with problems involving several concrete variables in or from standardized situations." *Id.*

contradict the ALJ's findings.[22]  Moreover, even if such inconsistency exists, it does not render the ALJ's determination unsupported by substantial evidence.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document.  The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

---

[22] A job that requires an RDL of two is not necessarily inconsistent with an RFC that includes only the ability to perform simple, routine work tasks. *See, e.g., Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 613–14 (E.D. Tex. 2009); *Gaspard v. Soc. Sec. Admin. Comm'r*, 609 F. Supp. 2d 607, 617 (E.D. Tex. 2009); *Pete v. Astrue*, No. 08–CV–774, 2009 WL 3648453, at *5–6 (W.D. La. Nov. 3, 2009); *Dugas v. Astrue*, No. 1:07–CV–605, 2009 WL 1780121, at *6 (E.D. Tex. June 22, 2009) ("A limitation of performing 1–2 step instructions in a simple, routine work environment does not necessarily preclude the ability to perform jobs with reasoning levels of 2 or 3.") (internal citations omitted); *Adams v. Astrue*, No. 07–CV–1248, 2008 WL 2812835, at *3 (W.D. La. June 30, 2008) ("As several courts have held, reasoning level two requires the worker to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations, and appears consistent with residual functional capacity to perform simple, routine work tasks."). In addition, "the use of the word 'detailed' in the DOT is not equivalent to the word 'detailed' as used in the Social Security regulations." *Adams*, 2008 WL 2812835, at *3; *see Abshire v. Astrue*, No. 07–CV–1856, 2008 WL 5071891 (W.D. La. Oct. 29, 2008) (stating that the Social Security Regulations have only two categories of abilities as to understanding and remembering instructions while the DOT has six levels for measuring this ability).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until June 19, 2013 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED June 5, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

25